SOUTHERN EXPRESS CO. *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. CO.*

(*Circuit Court, E. D. Missouri.*)

SAME *v.* MEMPHIS & LITTLE ROCK R. CO.

(*Circuit Court, E. D. Arkansas.*)

DINSMORE, President, etc., *v.* MISSOURI, KANSAS & TEXAS RY. CO.

(*Circuit Court, D. Kansas.*)

SAME *v.* ATCHISON, TOPEKA & SANTA FE R. CO.

(*Circuit Court, D. Kansas.*)

SAME *v.* DENVER & RIO GRANDE R. CO.

(*Circuit Court, D. Colorado.* February 21, 1882.)

1. EXPRESS BUSINESS DEFINED.

The express business is a branch of the carrying trade, the object of which is to carry small and valuable packages rapidly and safely.

2. COMMON CARRIERS — RAILROAD COMPANIES NOT ENTITLED TO OPEN EXPRESS MATTER.

A railroad company has no right to open and inspect packages conveyed over its road which are in charge of an express company.

3. SAME — EXPRESS COMPANIES ENTITLED TO DO BUSINESS ON RAILROADS — RAILROAD COMPANIES BOUND TO FURNISH PROPER FACILITIES — DISCRIMINATION.

Railroad companies are bound, as common carriers, to allow express companies to do business on their roads, and to provide such conveyances, by special cars or otherwise, attached to their trains, as are required for the safe and proper transportation of express matter, and they are bound to extend the use of such facilities on equal terms to all who are engaged in the express business.

4. SAME — RATES OF COMPENSATION.

Railroad companies are entitled to fair and reasonable rates of compensation.

5. SAME — HOW FIXED WHERE PARTIES DISAGREE.

Where rates of compensation cannot be agreed upon, the question of what rates are fair and reasonable is for the courts to decide.

6. SAME — CANNOT BE FIXED BY RAILROAD COMPANY.

A railroad company cannot lawfully fix upon an absolute rate of compensation and insist upon being paid by express companies in advance or at the end of each trip.

7. SAME — WHERE THERE HAS BEEN NO PREVIOUS ARRANGEMENT AS TO RATES.

Where no previous arrangement has existed, the court may devise a mode of compensation to be paid as the business progresses, with power of final revision.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

8. SAME—WHERE A PREVIOUS ARRANGEMENT HAS EXISTED.

    Courts may assume that rates of compensation which have existed between such companies are *prima facie* reasonable and just, and may require parties to conform to them as their business progresses, with the right on either side to keep and present an account of their business to the court at stated intervals, and claim an addition to or rebate from the amount so paid.

9. SAME—RAILROAD COMPANIES ENTITLED TO SECURITY.

    In such cases the railroad company may require a bond from the express company in advance to secure the payment of any amount which may thereafter be found to be due.

10. SAME—PROVISIONS OF THE CONSTITUTIONS AND STATUTES OF MISSOURI AND ARKANSAS.

    Statutory and constitutional provisions establishing maximum rates for transportation of passengers and freight on railroads, and forbidding discrimination in charges or facilities in transportation between transportation companies and individuals, do not present any obstacles to the enforcement of the rights of express companies in the manner above indicated.

In Equity.

In the case of the *Southern Express Co.* v. *St. Louis, Iron Mountain & Southern Ry. Co.* the plaintiff avers, in substance, that it is a corporation organized under the laws of Georgia, and has for a long time been engaged in doing an express business; that prior to the eleventh of May, 1880, it had been doing business as an express company, on the defendant's road, under a contract which the defendant was at liberty to rescind; that on the eleventh day of May, 1880, the defendant, through its president, notified the complainant by letter that after the twenty-sixth inst. it could not do business over defendant's road; that the plaintiff is lawfully entitled to demand and to receive the same facilities of transportation on said road as may be accorded by defendant to itself, and that it is entitled to deductions for accessorial service.

The bill concludes with the following prayers:

(1) That during the pendency of the suit the defendant may be restrained from interfering with the facilities now enjoyed by the Southern Express Company, now accorded it; from interfering with its messengers; from refusing to receive and transport, in the same manner as defendant is now doing, the express matter and messengers of the Southern Express Company, or interfering with its business or present relations with defendant in any manner whatever, so long as the express company is willing and ready to pay according to all legal rates therefor.

(2) That if, during the pendency of the suit, any dispute should arise between the parties as to what is reasonable compensation for transportation, the complainant may be permitted to bring the matter before the court for its decision.

(3) That defendant may be required to transport the express matter, safes

and messengers of the Southern Express Company by the same trains, and to the same accommodation, as it may transport its own express matter; that it be required to transport express matter for statutory tolls and compensation, as provided by law; that defendant may be required to make a reasonable rebate or reduction from its charges to the Southern Express Company, to be fixed by decree of court, by reason of its performance of accessorial service as specified.

(4) That a permanent injunction may issue to the same purport and effect as is prayed in regard to a preliminary injunction.

The defendant, in its answer, denies the material allegations of the bill, and avers:

That since the first of June, A. D. 1880, it has formed and organized an express department of its road, and has been and is now receiving and transporting over its lines, and delivering, freight commonly known as express freight, as it has a right to do; that the express business is a legitimate business of defendant; that it can serve the public without the intervention of the Southern Express Company, and can serve it as well, and that it is unjust to the stockholders of the company to permit a third party to make use of the property of defendant and the services of its employes to reap the profit for the transportation of freight which belongs to it; that the compensation it has received from the plaintiff for transportation over its lines during the term of the existence of the contract was inadequate for the service performed; that the conduct of complainant in the management of its business, its intervention between defendants and its customers, its taking a large amount of freight which was not properly express freight; its continued violation of its contracts under which it was permitted to do an express business, and its concealment and withholding true and correct reports of the weights of express freights transported over defendant's line of road, occasioned great damage to defendant, and compelled the termination of said contract; that as a common carrier it owes to complainant no other duty than to any other person desiring to transport freight over its road; that defendant does not claim the right to exclude the transportation of express matter of complainant over its road, and has always been willing, and is now willing, to transport any express matter in spaces in its cars selected by itself, and under the supervision, care, and control of its own employes, and denies that complainant has any right to have allotted to itself any particular space in defendant's cars, or to permit its messengers to take charge of its express freight.

The plaintiff filed a general replication in the usual form. Substantially the same points of law were raised by the pleadings in the other cases. A preliminary injunction was granted in the case of the *Southern Express Co.* v. *St. L., I. M. & S. Ry. Co.*, November 6, 1880. The case came up for final hearing before MILLER and McCRARY, JJ., at St. Louis, Missouri, on the seventh of February, A. D. 1882. Attorneys for the parties to all the above-entitled causes were present, and in pursuance of an agreement between them all of said causes were

argued and submitted together, so far as the questions of law therein involved were concerned.

*Glover & Shepley, S. M. Breckenridge,* and *F. E. Whitfield,* for the plaintiff in the case of the *Southern Express Company* v. *St. Louis, Iron Mountain & Southern Railway Company.*

*F. E. Whitfield,* for the plaintiff in the case of the *Southern Express Company* v. *Missouri & Little Rock Railway Company.*

*Clarence A. Seward,* for the Adams Express Company in all three of the cases; and—

*George F. Edmunds, John A. Campbell,* and *Clarence A. Seward,* for the plaintiffs generally.

*Gov. John C. Brown* appeared for the defendants generally.

*Jas. O. Broadhead* and *Thomas J. Portis,* for the St. Louis, Iron Mountain & Southern Railway Company.

*B. C. Brown,* for the Missouri & Little Rock Railway Company.

*G. W. Peck,* for the Atchison, Topeka & Santa Fe Railway Company.

*Lyman K. Bars,* for the Denver & Rio Grande Railway Company.

*Thomas J. Portis,* for the Missouri, Kansas & Texas Railway Company.

MILLER and MCCRARY, JJ., being absent, TREAT, D. J., read the following opinion and order in the first of the above-entitled causes:

MILLER, Justice.   In these cases, argued before me at St. Louis with Judges McCrary and Treat, I can do no more than present certain general conclusions at which my mind has arrived in regard to the propositions argued by counsel.

1. I am of the opinion that what is known as the express business is a branch of the carrying trade that has, by the necessities of commerce and the usages of those engaged in transportation, become known and recognized; that while it is not possible to give a definition in terms which will embrace all the classes of articles so usually carried, and to define it with precision by words of exclusion, the general character of the business is sufficiently known and recognized as to require the court to take notice of it as distinct from the transportation of the large mass of freight usually carried on steam-boats and railroads; that the object of this express business is to carry small and valuable packages rapidly in such a manner as not to subject them to the danger of loss and damage which to a greater or less degree attends the transportation of heavy or bulky articles of commerce, as grain, flour, iron, ordinary merchandise, and the like.

2. It has become law and usage, and is one of the necessities of

this business, that these packages should be in the immediate charge of an agent or messenger of the person or company engaged in it; and to refuse permission to this agent to accompany these packages on steam-boats or railroads in which they are carried, and to deny them the right to the control of them while so carried, is destructive to the business, and of the rights which the public have to the use of the railroads in this class of transportation.

3. I am of the opinion that when express matter is so confided to the charge of an agent or messenger the railroad company is no longer liable to all the obligations of a common carrier, but that, when loss or injury occurs, the liability depends upon the exercise of due care, skill, and diligence on the part of the railroad company.

4. That under these circumstances there does not exist, on the part of the railroad company, the right to open and inspect all packages so carried, especially when they have been duly closed or sealed up by their owners or by the express carrier.

5. I am of the opinion that it is the duty of every railroad company to provide such conveyances by special cars, or otherwise, attached to their freight or passenger trains, as are required for the safe and proper transportation of this express matter on their roads, and that the use of these facilities should be extended on equal terms to all who are actually and usually engaged in the express business. If the number of persons claiming the right to engage in this business at the same time, on the same road, should become oppressive, other considerations might prevail; but, until such a state of affairs is shown to be actually in existence in good faith, it is unnecessary to consider it.

6. This express matter and the person in charge of it should be carried by the railroad company at fair and reasonable rates of compensation, and where the parties concerned cannot agree upon what that is, it is a question for the courts to decide.

7. I am of the opinion that a court of equity in a case properly made out has the authority to compel the railroad companies to carry this express matter, and to perform the duties in that respect which I have already indicated, and to make such orders and decrees, and to enforce them by the ordinary methods in use, necessary to that end.

8. While I doubt the right of the court to fix in advance the precise rates which the express companies shall pay and the railroad companies shall accept, I have no doubt of its right to compel the performance of the service by the railroad company, and after it is

rendered to ascertain the necessary compensation and compel its payment.

9. To permit the railroad company to fix upon a rate of compensation which is absolute, and insist upon the payment in advance or at the end of every train, [trip,] would be to enable them to defeat the just rights of the express company, to destroy their business, and would be a practical denial of justice.

10. To avoid this difficulty I think that the court can assume that the rates or other mode of compensation heretofore existing between any such companies are *prima facie* reasonable and just, and can require the parties to conform to it as the business progresses, with the right to either party to keep and present an account of the business to the court at stated intervals, and claim an addition to or rebate from the amount so paid; and, to secure the railroad companies in any sum which may be thus found due them, a bond from the express company may be required in advance.

11. Where no such arrangement has heretofore been in existence, it is competent for the court to devise some mode of compensation to be paid as the business progresses, with like power of final revision on evidence, reference to matter, etc.

12. I am of the opinion that neither the statutes nor constitutions of Arkansas or Missouri were intended to affect the right asserted in these cases; nor do they present any obstacle to such decrees as may enforce the rights of the express companies.

In the case of the *Southern Express Co.* v. *Iron Mountain & Southern R. Co.*, McCRARY, J., made the following order:

In this case it is ordered that the injunction hereinbefore granted shall remain in force until otherwise ordered by the court. Counsel will be heard at a convenient time upon the question of the form of the decree to be entered herein, in pursuance of the opinion of the court, announced by Mr. Justice MILLER, and herewith filed.*

*On concluding the reading of Justice MILLER's opinion, Judge TREAT said that when Justice MILLER and Judge McCRARY were present he did not under the law have any voice in the decision of the case. Were it not so, he would put in writing a dissenting opinion as to some of the conclusions stated, for he was clearly of the opinion that it was beyond the powers and functions of the court to hold, practically, under their control the administration of railroad affairs as to freight and other business. The powers of the court extend no further than to compel equality of rates without discrimination, but not to settle or prescribe rates.

For final decree see post, 869.