LUCKENBACH STEAMSHIP COM-
PANY, Inc., Plaintiff,

v.

UNITED STATES of America
and

Baltimore and Ohio Railroad Company,
Chicago, Rock Island and Pacific Rail-
road Company, Denver and Rio Grande
Western Railroad Company, Pennsylva-
nia Railroad Company, Reading Com-
pany, Southern Pacific Company, and
Toledo, Peoria & Western Railroad
Company, Defendants.

Civ. A. No. 2144.

United States District Court
D. Delaware.

Dec. 14, 1959.

S. Samuel Arsht and Andrew B. Kirkpatrick, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Mark P. Schlefer, John Cunningham and Israel Convisser of Kominers & Fort, Washington, D. C., for plaintiff.

Leonard G. Hagner, U. S. Dist. Atty., Wilmington, Del., Robert A. Bicks, Acting Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant, United States.

Robert W. Ginnane, Gen. Counsel, I.C. C. and H. Neil Garson, Associate Gen. Counsel, I.C.C.; Washington, D. C., for Interstate Commerce Commission.

William S. Potter and Henry R. Horsey, of Berl, Potter & Anderson, Wilmington, Del., Jeremiah C. Waterman and Edward M. Reidy, Washington, D. C., Andrew C. Armstrong, Baltimore, Md., and Charles Burkett, Jr., San Francisco, Cal., for above-listed Railroad defendants.

Charles McD. Gillan, Jr., Baltimore, Md., for intervenor, North Atlantic Ports Conference.

Aaron Finger and E. Norman Veasey of Richards, Layton & Finger, Wilmington, Del., Alvin J. Rockwell and Willis R. Deming of Brobeck, Phleger & Harrison, San Francisco, Cal., and Washington, D. C., for intervenor, Pacific American Steamship Ass'n.

John P. Daley, Wilmington, Del., and Raymond A. Negus of Cake & Negus, Washington, D. C., for intervenors, Northwest Canners and Freezers Assn., Inc., and Canners League of Calif.

William Prickett, Sr., and William Prickett, Jr., of Prickett & Prickett, Wilmington, Del., for defendants, Baltimore & Ohio Railroad Co., and Reading Co.

Before BIGGS, Circuit Judge, and WRIGHT and RODNEY, District Judges.

CALEB M. WRIGHT, District Judge.

This injunction action initiated by plaintiff, Luckenbach Steamship Company, Inc. (Luckenbach) against the United States and certain railroads, seeks: "(1) to enjoin, set aside, annul, suspend or rescind the action and order of the Interstate Commerce Commission,

an agency of said defendant [United States], denying plaintiff's petition for suspension * * * of certain railroad rates published to become effective October 23, 1959", and "(2) to direct the said defendant [United States] through its agency the Commission, to suspend the operation of said rates;" and to direct the defendant railroads, "parties to such rates, to refrain from doing and/or continuing the actions and things herein complained of, designed (1) to monopolize the transportation of canned goods from Pacific coast origins to Atlantic coast destinations and (2) to drive plaintiff from the business." [1]

On October 22, 1959 the District Court issued a temporary restraining order staying the action of the Interstate Commerce Commission (Commission) denying plaintiff's petition for suspension and ordering the Commission to suspend the proposed rail rate. Thereafter, a three-judge statutory court was convened pursuant to 28 U.S.C.A. §§ 2325 and 2284.

Jurisdiction is alleged under the provisions of 28 U.S.C.A. §§ 1336–1337, 1398, 2284 and 2321–2325; Section 10 of the Administrative Procedure Act (5 U. S.C.A. § 1009); Sections 1, 2 and 3 of the Sherman Act (15 U.S.C.A. §§ 1, 2, 3); and Sections 12 and 16 of the Clayton Act (15 U.S.C.A. §§ 22, 26).

The matters now before the court are plaintiff's motion for an interlocutory injunction and defendants' motion to dismiss the complaint and dissolve the temporary restraining order.

The essential allegations of plaintiff's complaint and amendment thereof to which defendants' dismissal motion is addressed may be summarized as follows: [2]

Luckenbach, the only general cargo carrier in the intercoastal trade, is the low cost carrier of canned goods. Its rate on this traffic, without which it cannot exist, fully covers cost plus a return.

The proposed rail rate is below cost. Apart from its effect on Luckenbach, it will substantially reduce present railroad revenues now being earned on the large volume of canned goods moving by rail. The reduced rail rate will either deprive Luckenbach of its backbone traffic or force its rate to a point below cost, and drive the more efficient carrier out of the trade, exposing the public to later rail rate increases. The railroads have expressly limited the rate reduction to a term of one year at the end of which the present rate will automatically be restored. The Commission ordered an investigation, thus placing upon the railroads the burden of sustaining it. But the investigation could be, and in the light of the injury to Luckenbach, probably would be nullified by the failure to suspend the rate. For if, upon conclusion of the investigation, the Commission should find that the rate was unlawful, the elimination of Luckenbach from the trade might make permanent and irremediable the interim violation of the National Transportation Policy and the Sherman Anti-Trust Act. The Commission's failure to suspend was inconsistent with its order of investigation. This was compounded by its silence as to its reasons.

Plaintiff asserts that the immediate consequences in permitting the proposed rail rate to become effective would be: "(1) to violate and frustrate the mandate of the National Transportation Policy, 49 U.S.C. preceding § 1; (2) to violate the Sherman Anti-Trust Act under the doctrine of [State of] Georgia v. Pennsylvania R. R., 324 U.S. 439 [65 S. Ct. 716, 89 L.Ed. 1051] (1945); and (3) to subject Luckenbach, a major water carrier under the Commission's jurisdiction, to immediate, incalculable and irreparable injury." [3]

The defendants have moved for dismissal on the ground that this court is

---

1. Complaint.

2. Luckenbach's Brief in Support of Motion for Interlocutory Injunction and In Opposition to Motion to Dismiss Complaint and Dissolve Restraining Order at pages 2–4.

3. Ibid., p. 3.

without jurisdiction to review a Commission decision not to suspend the operation of new rate tariffs.

Plaintiff urges that Section 10(e) of the Administrative Procedure Act[4] plainly confers jurisdiction on the court to review the Commission's failure to suspend as it is authorized to do under Section 15(7) of the Interstate Commerce Act,[5] the material portion of which reads as follows:

> "(7) Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, or charge, or any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate, fare, or charge, the Commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, charge, classification, regulation, or practice; and pending such hearing and the decision thereon the Commission, upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, or practice, but not for a longer period

than seven months beyond the time when it would otherwise go into effect; * * *."

Section 10 of the Administrative Procedure Act[6] provides in part:

> "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion * * * (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review * *."

■ The wording of the Administrative Procedure Act apparently makes no change in the law of reviewability. Section 10 is so worded that it is obvious that the introductory clause modifies each of the subsections. Thus agency action is left unreviewable if the statute precludes review or to the extent agency action is by law committed to agency discretion. These two reasons were the only ones precluding review of administrative action by the court before the Administrative Procedure Act was enacted and the wording of the Act has brought about no change.[7]

■ Whatever the scope of review of subsection (e)[8] is when read alone, the scope of review is certainly narrowed by that portion of the introductory clause, "Except so far as * * * (2) agency action is by law committed to agency discretion." Thus, although subsection (e) provides that the reviewing court shall set aside agency action[9] found

---

4. 5 U.S.C.A. § 1009(e).

5. 49 U.S.C.A. § 15(7).

6. 5 U.S.C.A. § 1009.

7. See 4 Davis, Administrative Law Treatise, § 28.08 (1958).

8. Subsection (e) [5 U.S.C.A. § 1009] in part reads as follows: "Scope of review (e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * *."

9. Agency action is defined in the Administrative Procedure Act as including: "the whole or part of every agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." See 5 U.S.C.A. § 1001(g).

to be "arbitrary [or] capricious", it may not set aside arbitrary or capricious action so far as agency action is by law committed to agency discretion. So far as the action is by law committed to agency discretion it is not reviewable—even for arbitrariness or abuse of discretion. Whether or not agency action is reviewable, for a limited purpose or otherwise, depends upon what is committed by the statutes and common law to agency discretion.[10]

The Supreme Court in discussing the legislative history of the Act and how extensively, if at all, Section 10 changed the prior law on judicial review said:[11]

"* * * No easy answer is found in our decisions on the subject. Each statute in question must be examined individually; its purpose and history as well as its text are to be considered in deciding whether the courts were intended to provide relief for those aggrieved by administrative action. Mere failure to provide for judicial intervention is not conclusive; neither is the presence of language which appears to bar it."

Section 15(7) of the present Transportation Act[12] authorizing the Commission to suspend rates, pending a hearing to determine the lawfulness of the filed rate was added to the original Interstate Commerce Act of February 4, 1887 by Act of June 18, 1910.[13]

Prior to the passage of the amendment several bills in equity had been filed in Federal courts seeking injunctive relief against the carriers to preclude the collection of the newly published rates, pending a full hearing before the Commission. Some courts held that a court of equity had the power to enjoin the collection of the new rates[14] and others held to the contrary.[15]

The reviewability of action of the Commission under the amendment in refusing to suspend rates pending hearing seems to have been raised for the first time in M. C. Kiser Co. v. Central of Georgia Ry. Co.[16] There the court stated:

"* * * The point here involved is whether this remedy is exclusive or not—whether it ousts the United States courts of their general equity jurisdiction on that particular subject. The court is inclined to think the intention of Congress was to make the remedy provided by the amendment exclusive. * * *"

Since then, a span of approximately forty-three years, whenever the reviewability of denial of a rate suspension by the Commission has been the issue, the courts have refused review.[17] Not always have the reasons for unreviewability been the same,[18] but in every case review has been denied. The background against which the amendment was adopted and the wording of the

10. 4 Davis, Administrative Law Treatise, § 28.16 (1958).

11. Heikkila v. Barber, 1953, 345 U.S. 229, 233, 73 S.Ct. 603, 605, 97 L.Ed. 972.

12. 49 U.S.C.A. § 15(7).

13. See historical note following 49 U.S. C.A. § 15(7).

14. M. C. Kiser Co. v. Central of Georgia Ry. Co., C.C.N.D.Ga.1907, 158 F. 193; Jewett Bros. & Jewett v. Chicago, M. & St. P. Ry. Co., C.C.D.S.D.1907, 156 F. 160; Northern Pacific Ry. Co. v. Pacific Coast Lumber Mfrs. Ass'n, 9 Cir., 1908, 165 F. 1.

15. Columbus Iron & Steel Co. v. Kanawha & M. Ry. Co., 4 Cir., 1910, 178 F. 261;

Atlantic Coast Line R. Co. v. Macon Grocery Co., 5 Cir., 1909, 166 F. 206.

16. D.C.S.D.Ga.1916, 236 F. 573, 576, affirmed 5 Cir., 1917, 239 F. 718.

17. Coastwise Line v. United States, D.C. N.D.Cal.1957, 157 F.Supp. 305; National Water Carriers Ass'n v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 87; Carlsen v. United States, D.C.S.D. N.Y.1952, 107 F.Supp. 398; Merchant Truckmen's Bureau of New York v. United States, D.C.S.D.N.Y.1936, 16 F.Supp. 998; Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487.

18. Note 17, supra, and cases cited therein.

amendment indicates Congress did not intend to bestow upon the court authority to review the denial of a suspension order. Prior to the amendment, the right to promulgate rates in the first instance rested with the carrier. The Interstate Commerce Act does not deprive the carrier of this initiative which was theirs at common law.[19] The Act generally contemplates the filing of new tariffs with the Commission prior to a hearing. The grant or denial of a suspension order is an interlocutory step preceding a hearing and decision as to the lawfulness of the proposed rate. It may be made pending a hearing on the merits and without the introduction of testimony.[20] The Act does provide that if a suspension order is granted reasons must be stated, but if denied no reason whatever need be stated.[21] Since the Act contemplates Commission action without a hearing the basis for decision, whether written reasons are required or not, is the expertise of the Commission in the field of transportation. The Act clearly contemplates, no hearing by the Commission before decision and requires no reason be given if it denies suspension. Review in this posture would, in effect, supersede agency functioning. The court is constrained, therefore, to hold that the denial of a suspension of a rate by the Commission is by law committed to agency discretion and therefore not reviewable.

There remains for disposition plaintiff's antitrust claim. Defendants' conduct cited as evidencing Sherman Act §§ 1 and 2 violations is set forth below:[22]

"The railroads know, from Luckenbach's filed reports, the financial condition of the company and the fact that canned goods are vital to Luckenbach's business. Having already diverted a major part of this traffic to themselves by a previous rate cut, they now propose a further cut which will confront Luckenbach with two alternatives, both ruinous —to cut its rates below cost or to see all its canned goods traffic taken by the railroads. In either case Luckenbach cannot long remain in business, a result which the railroads have professed a determination to bring about. The proposed reduced rate terminates at the end of a year, when the present rate automatically again becomes effective. The reduced rate is below cost and will substantially reduce the revenue from the 62 percent of the canned goods traffic the railroads are carrying at the higher present rate."

Judicial cognizance of the above action is predicated upon two factors:[23]

(1) The independent applicability of the Sherman Act provision to regulate railroads remains unimpaired, for the I.C.C. has not been delegated power to enforce Sherman standards; and

(2) The provisions of the Interstate Commerce Act, authorizing the Commission to relieve carriers from antitrust responsibility for collective rate-making procedures, does not immunize the so-called predatory practices alleged.

Conceding plaintiff's proffer for the purpose of discussion it does not resolve the fundamental issue presented, namely, the applicability of the primary juris-

19. Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487, 493.

20. Long Island Railroad Company v. United States, D.C.E.D.N.Y.1956, 140 F. Supp. 823.

21. " * * * While a suspension order must state reasons, the basis for the reasons we assume to be the expert knowledge of the members of the Suspension Board or the Division of the Commission, acting as an appellate division. This is not to be found however in the record of the proceeding before the Commission. Concededly it need not be recorded when suspension is denied, for then no reason whatever need be stated." Long Island Railroad Company v. United States, D.C.E.D.N.Y.1956, 140 F. Supp. 823, 827.

22. Plaintiff's Memorandum of Law, p. 38.

23. Ibid., p. 39.

diction doctrine.[24] Plaintiff misconceives the modern import of the concept.[25] The recent decisional law, in conjunction with the legal literature strongly urges where an administrative board, particularly knowledgeable in a specialized area, has been established, preliminary resort to the body should be had if some phase of the matter in litigation is within its exclusive jurisdiction.[26]

As observed by Mr. Justice Frankfurter in Far East Conference v. United States:[27]

> "* * * Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

The requirement of preliminary resort to administrative boards is imperative to achieve maximum effectiveness from our judicial process. To bypass an agency peculiarly adapted in a particular field would be a complete economic and judicial waste. An integrated system necessitates that agency action precede court review where machinery has been created for this procedure. Especially is this true in the area of national transportation and other fully regulated industries.[28]

■ Application of the foregoing principles to the allegations of the complaint conclusively demonstrates the antitrust charges should be initially considered by the Commission. That the precise facts forming the basis of plaintiff's antitrust action are cognizable by the Commission is amply supported by plaintiff's showing before the Commission in the suspension proceeding. There, in an application designated "Protest and Petition for Suspension" at pages 9–10 plaintiff stated:[29]

> "IV. *Violation of the Antitrust Laws*
>
> "The proposed reduction is thus designed to eliminate the competi-

---

**24.** "The doctrine of primary jurisdiction, or exclusive primary jurisdiction, or primary decision, or preliminary resort, or prior resort, is not a doctrine that governs judicial review of administrative action. In this important respect, it is altogether different from the doctrines of exhaustion and of ripeness, which govern the timing of judicial review of administrative action. The doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision.

* * * * * * *

"The doctrine of primary jurisdiction does not necessarily allocate power between courts and agencies, for it governs only the question whether court or agency will *initially* decide a particular issue, not the question whether court or agency will *finally* decide the issue. * * *" 3 Davis, Administrative Law Treatise, § 19.01, pp. 1–3 (1958).

**25.** "The holding that the Board had primary jurisdiction, in short, was a device to prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination

by the Court of the scope and meaning of the statute as applied to those particular circumstances. * * *" Federal Maritime Board v. Isbrandtsen Co., 1958, 356 U.S. 481, 498–499, 78 S.Ct. 851, 862, 2 L.Ed.2d 926.

**26.** Note 35, infra and accompanying text.

**27.** 1952, 342 U.S. 570, 574–575, 72 S.Ct. 492, 494, 96 L.Ed. 576.

**28.** "* * * Accordingly, this Court consistently held that when rates and practices relating thereto were challenged under the antitrust laws, the agencies had primary jurisdiction to consider the reasonableness of such rates and practices in the light of the many relevant factors including alleged antitrust violations, for otherwise sporadic action by federal courts would disrupt an agency's delicate regulatory scheme, and would throw existing rate structures out of balance." United States v. R. C. A., 1959, 358 U.S. 334, 348, 79 S.Ct. 457, 466, 3 L.Ed.2d 354.

**29.** Document styled "Protest and Petition for Suspension" attached to the complaint.

tion of Luckenbach—and is well calculated to that effect. When such a purpose is effected through collective rate-making procedures and action —otherwise exempt—they violate sections 1 and 2 of the Sherman Antitrust Act."

The National Transportation Policy required to be considered by the Commission provides in part: [30]

" ' It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, \* \* \* to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue prefer-

ences or advantages, or unfair or destructive competitive practices; \* \* \* All of the provisions of this Act \* \* \* shall be administered and enforced with a view to carrying out the above declaration of policy.' "

Plaintiff's assertion that the railroads' predatory practices violate, inter alia, the aforementioned provision, additionally forms the basis for its charge that defendants wrongfully attempt to monopolize "a part of the trade or commerce among the several States".[31]

Plaintiff seeks not only antitrust relief against defendant railroads but also against the Commission for it is the final action of the Commission in permitting the rates to become effective that is injurious to plaintiff.[32] Thus, if the

30. 49 U.S.C.A. Historical Note preceding § 1.

31. Complaint, allegation 19.

32. Plaintiff's Reply Brief at page 3 states: "Insofar as relief is sought against the Interstate Commerce Commission on anti-trust grounds, the basis for jurisdiction in this panel is clear. Commission action is the *sine qua non* for effectuating the anti-trust violation. The Commission's imprimatur is an essential prerequisite to the proposed reduction by which the roads seek plaintiff's destruction. Fully informed that its action will have this effect, the Commission has, nevertheless, persisted in its position. When, as here, an agency of the government permits its sanctions to be used to consummate a violation of the anti-trust laws, it is not beyond the judicial reach."

And on pages 86–87 of the Transcript of the Oral Argument the following colloquy between court and counsel for plaintiff appears:

"Judge Wright: Suppose you just wanted to restrain the Railroads from exercising the right given them by the Commission, I.C.C. law, to make these rates effective, would that not have been a one-judge matter which would come up under the Clayton Act, anti-trust laws?

"Mr. Kirkpatrick: If our relief were sought solely against the Railroads, then I would have thought that a one-judge court could have heard the matter.

"Judge Wright: It is your position, under the anti-trust theory, that you are

entitled to any relief at all against the I.C.C.?

"Mr. Kirkpatrick: Yes, sir, very definitely.

"Judge Biggs: Do you assert that the I.C.C. is in an illegal combination with the Railroads?

"Mr. Kirkpatrick: Our theory is that the action of the I.C.C. here is really the last link in the chain by which this anti-trust violation will be consummated. Here is the point: As I understand it, the rate, which the Railroads propose, cannot be made effective except by a filing with the Commission and Commission action permitting it to become effective. Unless that is done the rate cannot be charged. When the rate is filed with the Commission, the Commission permits it to become effective, then that becomes the only legal rate. It acquires statutory force, and it is the only rate which the carriers can lawfully collect or the shippers can properly pay. Consequently, Commission action is really the last step in this whole thing. If the rate did not go into effect by virtue of Commission processes, then we would not be hurt and would not be before your Honors this afternoon."

Chief Judge Biggs and I construe the broad allegations of the complaint, together with counsel for plaintiff's aforementioned remarks as enunciating an antitrust cause of action against the Commission. We find it unnecessary in view of the final determination to pass on whether an agency of the United States can be made a party defendant in a private antitrust action.

rates be finally declared contrary to the National Transportation policy, then the purported conspiratorial action will have been thwarted.

Paramount in this determination inviting the Commission to initially rule on the instant claims is the fact that defendant railroads are operating pursuant to § 5(a) antitrust exemption agreements.[33] Section 5(a) supersedes the Sherman Act to the extent that the Approved agreement is immunized from Sherman Act proscriptions;[34] and since Section 5(a) is administered by the Commission it is incumbent upon the court to seek the observations of the Commission with respect to the extent and scope of the exemption. The exemption certainly does not sterilize all forms of conspiratorial action, however, to foster an orderly administration of the immunization provision requires, at the minimum, primary construction by the Commission.

Professor Davis in his Administrative Law Treatise suggests that under the circumstances presented, initial resort to the administrative agency is indicated:[35]

"(1) On the question whether the doctrine applies to problems or relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine—to assure that the agency will not be by-passed on what is especially committed to it—and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought."

The principle enunciated by Professor Davis is eminently sound. Accordingly, plaintiff is required to address these antitrust charges in the first instance to the Commission.

The sole question remaining is whether to dismiss or retain jurisdiction of the antitrust charges. The preferred

33. "The railroad defendants engage, together with virtually all other United States and some Canadian railroads, in collective ratemaking under agreements approved by the Interstate Commerce Commission under section 5a of the Interstate Commerce Act (49 U.S.C. § 5b)." Complaint, allegation 6.

34. 49 U.S.C.A. § 5b provides in relevant part:

[¶ 2] "Any carrier party to an agreement between or among two or more carriers relating to rates, fares, classifications, divisions, allowances, or charges (including charges between carriers and compensation paid or received for the use of facilities and equipment), or rules and regulations pertaining thereto, or procedures for the joint consideration, initiation or establishment thereof, may, under such rules and regulations as the Commission may prescribe, apply to the Commission for approval of the agreement, and the Commission shall by order approve any such agreement (if approval thereof is not prohibited by paragraph (4), (5), or (6) of this section) if it finds that, by reason of furtherance of the national transportation policy declared in this Act, the relief provided in paragraph (9) of this section should apply with respect to the making and carrying out of such agreement; otherwise the application shall be denied. The approval of the Commission shall be granted only upon such terms and conditions as the Commission may prescribe as necessary to enable it to grant its approval in accordance with the standard above set forth in this paragraph."

[¶ 9] "Parties to any agreement approved by the Commission under this section and other persons are, if the approval of such agreement is not prohibited by paragraph (4), (5), or (6) of this section, relieved from the operation of the antitrust laws with respect to the making of such agreement, and with respect to the carrying out of such agreement in conformity with its provisions and in conformity with the terms and conditions prescribed by the Commission."

35. 3 Davis, Administrative Law Treatise, § 19.07, p. 39 (1958).

procedure is to dismiss. As observed by the Supreme Court: [36]

"We believe that no purpose will here be served to hold the present action in abeyance in the District Court while the proceeding before the Board and subsequent judicial review or enforcement of its order are being pursued. A similar suit is easily initiated later, if appropriate. Business-like procedure counsels that the Government's complaint should now be dismissed, * * *."

■ Defendants have questioned the jurisdiction and propriety of the statutory three-judge court acting upon the antitrust claim. The antitrust cause and the action to review are so inextricably enmeshed that it would be unwarranted to truncate the litigation at this juncture. To refer the antitrust phase to the district court would require different reviewing tribunals to initially rule on the respective phases of this determination.[37]

Against this background, and in view of the ancillary nature of the antitrust charges, Chief Judge Biggs and I are in accord that the presently constituted court has jurisdiction in the premises.

■ The complaint will be dismissed. An order to such effect is filed concurrently with this opinion.

RODNEY, District Judge (concurring in part and dissenting in part).

I am in entire accord with most of the conclusions herein reached. I agree that, under existing provisions of law and procedure, where change of rate of transportation is considered by the carrier, it is the duty of the carrier, intending such change, to file the proposed new rates with the Interstate Commerce Commission. Upon a protest being filed, it becomes the duty of the Interstate Commerce Commission to determine the lawfulness of the new rates. In doing this the Commission may, but need not, order a suspension of the new rates until final hearing. If suspension is ordered, reasons for the action by the Commission must be assigned. If no suspension of the new rates is ordered by the Commission, no order is signed and, under the weight of authority, no reasons need be assigned for such refusal.

The failure or refusal of the Interstate Commerce Commission to suspend the operation of the new rates as in this case until final hearing is, I agree, an exercise of discretion vested in such Commission and since the discretion has been exercised then under the provisions of the Administrative Procedure Act (5 U.S.C.A. § 1009(e)) it is excluded as to reviewability. So much for the relief sought against the Interstate Commerce Commission by injunction.

36. Far East Conference v. United States, 1952, 342 U.S. 570, 577, 72 S.Ct. 492, 495, 96 L.Ed. 576.

37. 28 U.S.C.A. § 1253 provides:
"Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."
This section applies wherein either an interlocutory or permanent injunction is sought to restrain the enforcement, operation or execution, in whole or in part of any order of the Interstate Commerce Commission "other than for the pay-

ment of money or the collection of fines, penalties and forfeitures." 28 U.S.C.A. §§ 2321, 2325.
Appeal from the decision of the United States District Court for the District of Delaware sitting as a one judge court dismissing an antitrust claim as herein alleged would be pursuant to 28 U.S. C.A. § 1291 which states:
"The courts of appeal shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

The complaint also states a claim against the defendant railroads and others acting in combination with them under the antitrust laws. The majority opinion finds that the doctrine of Primary Jurisdiction requires that this matter be first considered by the Interstate Commerce Commission and dismisses the plaintiff's claim as arising from the violation of the antitrust laws upon that basis. It is not the conclusion that the Primary Jurisdiction with reference to some features of the antitrust laws rests with the Interstate Commerce Commission to which I object for I do not reach that question. I question whether the special three-judge court should determine this matter or whether it should be determined by the district court as normally constituted, and with which this case was originally filed.

The three-judge court is somewhat of an anomaly. It is a federal district court consisting at times of three judges instead of one. It is of purely statutory origin and intended for distinct and limited purposes.

Starting as an expediting provision in 1903 with reference to certain antitrust cases and as insuring direct review by the Supreme Court (32 Stat. 823, 15 U. S.C.A. §§ 28, 29) the three-judge court has been made applicable to several situations. Among these were suits to annul, set aside or restrain orders of the Interstate Commerce Commission and matters concerning the constitutionality of the state statutes or administrative orders. In these latter instances the requirement of a three-judge court is inextricably and almost universally interwoven with the matter of injunction and the disinclination to allow the issuance or refusal of an injunction in certain cases to be determined by one judge. So it is that by 28 U.S.C. § 2325 any injunction restraining the enforcement operation or execution, in whole or in part, of any order of the Interstate Commerce Commission will be determined by a three-judge court under 28 U.S.C. § 2284.

It will be borne in mind that it is not every proceeding to review an order or action of the Interstate Commerce Commission that requires a three-judge court. While every action to enforce, annul or set aside an order of the Interstate Commerce Commission is required by 28 U.S.C. § 2321 to be taken under the provision of Chapter 157 of Title 28, yet the bringing of such action does not operate of itself to require a three-judge court or to operate as a stay or suspend the order of the Interstate Commerce Commission and if no request is made for a stay or suspension of the order of the Interstate Commerce Commission the case would remain in the district court as normally constituted.

It is only under Section 2325 the three-judge court comes into existence. If an interlocutory or permanent injunction restraining the enforcement of the order of the Interstate Commerce Commission is requested, then and only then does the three-judge court come into existence.

In the present proceedings and insofar as the antitrust claim is concerned, no injunction against the Interstate Commerce Commission with reference to the antitrust claim is suggested in the complaint nor mentioned in the relief sought. It is true that in the briefs the plaintiff seeks to consider the action of the Commission in refusing to suspend the proposed rates as constituting an effective step in the antitrust claim, but no injunction is considered in the complaint with reference to that claim.

Although neither the complaint in this case nor the prayers for relief mention the Interstate Commerce Commission with reference to the antitrust claim, yet the majority of this Court considers that the Interstate Commerce Commission is claimed by the plaintiff with participating in some way in the antitrust violation. Whether the Commission be considered an active participant in the antitrust claim and therefore essentially as a defendant, or whether the non-action of the Commission merely furnished the means by which the railroads may be charged with violation of the antitrust

laws, then in neither case do I see any jurisdiction in a three-judge court since no injunctive relief is involved in any way.

I am of the opinion that the three-judge court as such has only such jurisdiction as is expressly given to it by statute and does not have jurisdiction to determine either the merits of the antitrust claim nor to dismiss the antitrust claim under the Primary Jurisdiction principle. I think that all questions as to the antitrust claim should be considered by the district court as normally constituted and as embracing the residuum of the claim of the plaintiff not cognizable by the three-judge court. A portion of the complaint not cognizable by a three-judge court may, I think, be segregated from that part coming within the jurisdiction of such three-judge court.[1]

1. Shippers' Car Supply Committee v. Interstate Commerce Comm., D.C.D.Or., 1958, 160 F.Supp. 939, 943.