**BISON STEAMSHIP CORPORATION,** Cooper Steamship Company, Gartland Steamship Company, Nicholson Transit Company, Oglebay Norton Company, Roen Steamship Company, and Great Lakes Ship Owners Association, Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 35783.

United States District Court
N. D. Ohio, E. D.
March 29, 1960.

**64**

Andrew C. Hartzell, Jr., and Malvin E. Bank, of Thompson, Hine & Flory, Cleveland, Ohio, for plaintiffs. John H. Eisenhart, Jr., and James L. Givan, Washington, D. C., of counsel on the brief.

Robert W. Ginnane, Gen. Counsel, I. C. C., Francis A. Silver, Associate Gen. Counsel, I. C. C., Washington, D. C., Robert A. Bicks, Acting Asst. Atty. Gen., James H. Durkin, Atty., Dept. of Justice, Washington, D. C., and Russell E. Ake, U. S. Atty., Cleveland, Ohio, for the United States and Interstate Commerce Commission.

Andrew C. Armstrong, Baltimore, Md., T. O. Broker, J. T. Clark, Cleveland,

Ohio, L. T. Duerinck, Donald M. Tolmie, Chicago, Ill., and Edward A. Kaier, Philadelphia, Pa., for intervening railroads.

Andrew P. Martin and Charles F. Clarke, Jr., of Squire, Sanders & Dempsey, Cleveland, Ohio, for United States Steel Corp., intervener.

Before WEICK, Circuit Judge, and CONNELL and KALBFLEISCH, District Judges.

CONNELL, District Judge.

This action is before this three-judge statutory court, convened pursuant to 28 U.S.C.A. § 2284, to compel the Interstate Commerce Commission (hereinafter called Commission) either to reject from its files, or, in the alternative, to suspend the operation of certain tariff schedules containing reduced all-rail rates on pig iron moving from Cleveland, Ohio, to Chicago, Illinois, pending an investigation into their lawfulness under the Interstate Commerce Act. The plaintiffs are various individual steamship companies and a ship owners' association. The defendants are the United States of America and the Interstate Commerce Commission. Various railroad carriers, participants in the newly-published rate schedule, have been permitted to intervene in this action, as has The United States Steel Corporation. The defendants have moved this Court to dismiss the complaint for various reasons, discussed below, and the intervening defendants have supported this motion.

The undisputed facts of the case, as gleaned from the well-documented briefs of all the interested parties, are as follows: By rate schedules filed with the Commission to become effective November 1, 1959 (subsequently postponed until December 1, 1959), certain railroads [1] proposed to establish a new, reduced rate of $6.02 per ton, carload minimum of fifty tons, on pig iron moving via all-rail routes from Cleveland to Chicago. Petitions were timely filed with the Commis-

[1]. The Baltimore and Ohio Railroad Company; Erie Railroad Company; New York Central Railroad Company; New York, Chicago and St. Louis Railroad Company; and the Pennsylvania Railroad Company.

sion, pursuant to the provisions of Section 15(7) of the Interstate Commerce Act, 49 U.S.C.A. § 15(7) (hereinafter called the Act), requesting that the aforesaid rate schedules either be rejected or suspended pending an investigation into their lawfulness under the Act. The petitions and requests were first considered by the Board of Suspension and Investigation of the Commission, which declined either to suspend or reject the rate schedules. Thereupon an appeal was filed with Division 2 of the Commission, which also declined to take any action. Under the Commission's Organization Minutes such action by Division 2 was administratively final so far as the question of refusal to suspend was concerned.

The briefs in the case further show that the assailed rate was established by the intervening defendant railroads for the specific purpose of moving the traffic of the American Steel and Wire Division of the United States Steel Corporation, which is located at Cleveland, Ohio. This Division owns and operates a vessel on the Great Lakes known as the S. S. Clifford Hood, and the operational costs which the shipper would incur if it used this vessel to transport its pig iron from Cleveland to Chicago was primarily determinative of the level of the newly-published rate.[2] Additionally, United States Steel Corporation wholly owns the Elgin, Joliet & Eastern Railway Company, a common carrier by rail as defined in Section 1(3) of the Act. Plaintiffs contend that this railroad is a participating carrier in many of the routes via which the assailed rate would apply, and is a joint party to such rate.

Plaintiffs request this Court to order the Commission to either suspend or reject the rates. They base their request on an allegation that the Commission arbitrarily and capriciously abused its discretion in refusing to take the requested action in that the facts elicited during the informal suspension proceedings clearly showed a violation of, (1) Section 5(14) of the Act (The Panama Canal Act) in that the Elgin, Joliet and Eastern Railway Company and the vessel S. S. Clifford Hood are both owned by the United States Steel Corporation and do or may compete with each other for the traffic under consideration; (2) Section 1(6) of the Act, in that the assailed rate schedules will result in unjust and unreasonable rates, tariffs, regulations and practices; and (3) The National Transportation Policy (49 U.S.C.A. Historical Note preceding Section 1) in that the assailed rate schedules will result in unfair and destructive competitive practices.

Defendants in their joint motion to dismiss, filed pursuant to Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A., claim that, (1) the complaint fails to state a claim upon which relief can be granted; (2) the Court lacks jurisdiction over the subject matter, in that (a) the matter complained of is, by the express provisions of the Interstate Commerce Act, committed to the discretion of the Commission and is not subject to review by this Court, (b) there is no order of the Commission involved, thus no review of a Commission order is possible, (c) the rate schedule complained of is already in effect and may only be changed in the manner provided by the Act, and (d) plaintiffs have failed to exhaust their administrative remedies.

Despite the comparatively involved recitation of claims and counterclaims, the issue which squarely confronts the Court is whether Section 15(7) of the Interstate Commerce Act has committed the suspension proceedings involved in this controversy solely to the discretion of the Interstate Commerce Commission so as to deny this Court jurisdiction to review the Commission's refusal to suspend the published rate.

---

**2.** Exactly how the cost of shipping on the S.S. Clifford Hood was arrived at, or how such figure was used in reaching the $6.02 per ton rail rate, is not clear from the briefs or the oral arguments, and since, as illustrated later in the body of the opinion, the suspension proceeding is highly informal, there is no record upon which this court can make its own independent analysis.

Plaintiffs have admitted in their brief in opposition to defendants' motion to dismiss that generally, in the absence of special circumstances, the Commission's refusal to suspend is not reviewable. Indeed, the authority for this proposition is so overwhelming that any serious argument to the contrary would be legally implausible.[3] However, plaintiffs contend that in the suspension proceedings, informal as they may have been, they offered conclusive evidence to the Commission that the Panama Canal Act[4] had been violated, and that the direct result of this illegal competitive relationship between the S. S. Clifford Hood and the Elgin, Joliet & Eastern Railway Company was the rate which plaintiffs are now attacking. Premising their argument on the above allegations, plaintiffs reach the conclusion that the Commission, under these circumstances, is stripped of any discretion it might have had to refuse to suspend the rates.

Initially it should be noted that the statute contemplates that most rates will be established on the carriers' own initiative simply upon their being filed with the Commission and published.[5] Thus any rates, thirty days after they are filed and published by the participating railroads, unless overridden or altered by the Commission in the interim, are clothed with legality. While such rates are not Commission-approved, unless and until the Commission takes some positive action the rates continue to be effective. Under 49 U.S.C.A. § 15(7), the Commission may act either when a hearing has been requested by an aggrieved party or on its own motion, and the granting of a suspension order under this Section is simply an interlocutory step preceding a full hearing and final decision as to the reasonableness of the proposed rates. No formal hearing need be held by the Commission in a suspension proceeding under Section 15(7), and no reason need be given for denying a requested suspension.[6] As a result of this informality, there is no "record" of sworn testimony and exhibits which might be used on review by a court. The Commission reaches its decision under Section 15(7) as a result of its administrative expertise in considering the unsworn and informally elicited information.

Luckenbach S. S. Co. v. United States, D.C.D.Del.1959, 179 F.Supp. 605, and many of the cases cited therein, seem sufficient authority for this Court to grant the motion to dismiss without further discussion. Judge Wright's highly-documented and well-reasoned opinion, if followed to its furthest logical extreme, indicates that under no conceivable circumstance is the Commission's refusal to suspend under Section 15(7) subject to judicial review. However, since such an unlimited reading of the case would appear to put it in conflict with Seatrain Lines, Inc. v. United States, D.C.S.D. N.Y.1958, 168 F.Supp. 819, this Court chooses to base its decision on other grounds.

The pertinent provisions of the Panama Canal Act are found in Sections 5 (14) and 5(15) of the Interstate Com-

---

3. See, for example, Luckenbach S.S. Co. v. United States, D.C.Del.1959, 179 F.Supp. 605; Coastwise Line v. United States, D.C.N.D.Cal.1957, 157 F.Supp. 305; National Water Carriers' Ass'n v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 87; Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487.

4. Section 5(14) of the Interstate Commerce Act, 49 U.S.C.A. § 5(14).

5. Section 6(3) of the Interstate Commerce Act, 49 U.S.C.A. § 6(3).

6. The special rules of practice governing the procedure of the Board of Suspension, 49 C.F.R. 1.200, state in part: "The proceedings of the Board of Suspension and the Fourth Section Board shall be informal: No transcription of such proceedings will be made. Subpoenas will not be issued and, except when applications or petitions are required to be attested (in the case of Fourth Section applications), oaths will not be administered." And see Section 1.42 of the Commission's General Rules of Practice, 49 C.F.R. 1.42. See also, Luckenbach S.S. Co. v. United States, supra note 3.

merce Act.[7] Section 5(14), in pertinent part, reads:

"(I)t shall be unlawful for any carrier * * *, or * * * any person controlling * * * such a carrier to own, lease, operate, control, or have any interest whatsoever * * * in any common carrier by water * * * with which such carrier aforesaid does or may compete for traffic or any vessel carrying freight or passengers * * with which said railroad or other carrier aforesaid does or may compete for traffic; and in case of the violation of this provision each day in which such violation continues shall be deemed a separate offense."

Section 5(15), in pertinent part, provides:

"Jurisdiction is [hereby] conferred on the Commission to determine questions of fact, arising under paragraph (14), as to the competition or possibility of competition, *after full hearing*, on the *application* of any railroad company or other carrier * * *. In all such cases the order of said Commission shall be final." (Emphasis added.)

■ Keeping in mind the necessary informality surrounding the suspension hearing[8] and recognizing that the language quoted immediately above dictates that a Panama Canal Act violation be determined only after a full hearing on application of the aggrieved carrier, this Court is unable to find merit in plaintiffs' claim that the record before the Commission in this case "conclusively shows" a violation of the Panama Canal Act (hereinafter called Canal Act). The proceedings established by Section 5(15)—a full hearing—can by no stretch of our judicial imagination include the informal hearing intended for rate suspension proceedings. The United States Congress has spelled out in clear and uncompromising terms that a full hearing is necessary before a Canal Act violation can be found, and that this hearing is to be held before the Commission, whose order shall be final. Had the Suspension Board or Division 2 in this case suspended the rates solely on their belief that a violation of the Panama Canal Act had occurred, they would have been seriously remiss in their obligation to uphold and effectuate duly-enacted legislation falling within their designated area of activity. Since there was absolutely no basis upon which the Commission, in the suspension proceedings, could have found a violation of the Canal Act, *a fortiori*, there could have been no "conclusive showing" of such violation so as to rob the Commission of its admitted discretion in this respect.

■ What has been said of the Commission's lack of statutory authority to find a Canal Act violation in a 15(7) suspension proceeding applies with even greater force to this Court, for we are not even the properly-nominated fact-finding body to make the initial finding of such a violation. During the course of the oral hearing, plaintiffs offered into evidence the minutes and other records of the suspension proceedings, apparently in the belief that this Court would find the necessary support for their claim of a clear violation of the Canal Act. As we read the mandate of Section 5(15) no matter what the quality and/or quantity of the proffered evidence, we are without one shred of authority to find a violation of Section 5(14). Nor, it seems, can we find an abuse of the Commission's discretion in this regard, for as yet the Commission has received nothing upon which it might be indiscreet, no applica-

7. 49 U.S.C.A. § 5(14) (15).

8. Not only does the language of the statute itself imply an informal hearing, but the Seventy-third Annual Report of the Interstate Commerce Commission, which reports a total of 5600 rate adjustments handled by the Board of Suspension, Division 2, or the Commission itself, during the fiscal year ending June 30, 1959, shows the impossibility of a full and formal hearing on every suspension proceeding. (See defendants' brief in support of its motion to dismiss, p. 11.)

tion having been made yet for a hearing under Section 5(15).

■■ Along this same line, the plaintiffs suggest that for purposes of this motion to dismiss we must accept as true their allegation that the Panama Canal Act has been violated. We find no merit in this contention. It is certainly true that for purposes of deciding a motion to dismiss, the well-pleaded and material allegations of the complaint are taken as admitted. Professor Moore states the universal rule this way: "(A) complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." [9] Plaintiffs' claim is that the Commission's action in refusing to suspend the assailed rate was arbitrary and capricious. As indicated above, we hold that an alleged violation of the Panama Canal Act cannot be proved in this Court in support of their claim. Therefore, the allegation is neither well-pleaded nor material, and need not be considered on this motion to dismiss.

■■ The briefs and oral arguments of the intervening railroads and steel company make it abundantly clear that there is a serious dispute whether in fact there is a violation of the Canal Act. This question will be determined if and when a proper hearing is held pursuant to Section 5(15). However, even if we were to assume that a violation of the Canal Act had been legally determined and was properly before the Commission during the suspension hearings, the matter of whether suspension was warranted would still be within the discretion of the Commission in deciding whether the new rate is "unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial," which it is their sole duty to determine after a full hearing and complete investigation of the assailed rate.[10] Violators of the Canal Act become misdemeanants and are subject to the penalties found in 49 U.S.C.A. § 10(1). During the oral arguments, in answer to a question from the bench on this very point, counsel for plaintiffs claimed that if a violation of the Panama Canal Act is found, then the rate which allegedly is founded on and justified by the illegal competitive relationship under the Canal Act becomes presumptively illegal. This same theme runs throughout the lengthy brief submitted by plaintiffs. We cannot subscribe to this theory. The question before the Commission in the suspension proceeding was whether the published rate should be suspended as probably unreasonable while a full hearing as to its legality was undertaken. In concluding that it should not suspend, we must assume the Commission relied upon its particular expertise in the area of national transportation. Included in its deliberations were the claims of plaintiffs that illegal competition under the Panama Canal Act was the foundation for the new rate. But this claim was only a portion of the testimony that must have been considered by the Commission before declining to suspend,[11] which by im-

9. 2 Moore's Federal Practice, p. 2245.

10. Section 15(1) of the Interstate Commerce Act, 49 U.S.C.A. § 15(1). Seatrain Lines, Inc. v. United States, D.C. S.D.N.Y.1958, 168 F.Supp. 819 is not helpful to plaintiffs. Section 4(1) of the Interstate Commerce Act makes it unlawful for carriers to charge greater compensation for a shorter than a longer distance without express authorization by the Commission. The defendant carriers conceded that the rates were higher for the shorter distances, and that the Commission had not expressly authorized the otherwise illegal rates. In the instant situation, the rates are not conceded to be unreasonable, even were we to assume a violation of the Panama Canal Act.

11. " * * * Accordingly, this Court consistently held that when rates and practices relating thereto were challenged under the antitrust laws, the agencies had primary jurisdiction to consider the reasonableness of such rates and practices in the light of the many relevant factors including alleged antitrust violations, for otherwise sporadic action by federal courts would disrupt an agency's delicate regulatory scheme, and would throw ex-

plication showed that the Commission was satisfied that the rate was not so likely to be unreasonable that it should exercise its unique suspension powers pending a full hearing. Nowhere, either in the statute itself or in the case law decided under it, was the Court able to find authority to support plaintiffs' claim that the rates were presumptively illegal. Neither the language of the relevant sections nor our own logic permit us to believe that a finding of illegality under one section of the Interstate Commerce Act necessitates a finding that new rates published under another section of the Act are thereby illegal. An attempt on our part to override the Commission's decision would be grossly presumptive [12] and in complete derogation of the highly technical statutory scheme upon which the Interstate Commerce Commission is authorized to act.

"To bypass an agency peculiarly adapted in a particular field would be a complete economic and judicial waste. An integrated system necessitates that agency action precede court review where machinery has been created for this procedure. Especially is this true in the area of national transportation and other fully regulated industries." Luckenbach S. S. Co. v. United States, D.C.D.Del.1959, 179 F.Supp. 605, 611.

On the basis of the foregoing discussion, the Court is of the opinion that it has no jurisdiction to hear the merits of the complaint, and that the refusal of the Commission to suspend the assailed rate is non-reviewable in this action. Plaintiffs are not left remediless for they may still proceed under Section 13(1) of the Interstate Commerce Act, 49 U.S. C.A. § 13(1). Defendants' motion to dismiss is hereby granted.

An order may be prepared in accordance with the foregoing.

WEICK, Circuit Judge, and KALBFLEISCH, District Judge, concur.

---

isting rate structures out of balance." United States v. Radio Corp. of America, 1959, 358 U.S. 334, 348, 79 S.Ct. 457, 466, 3 L.Ed.2d 354.

12. The National Transportation Policy required to be considered by the Commission in all of its decisions under the Interstate Commerce Act provides in part: "It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, * * to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices; * * * All of the provisions of this Act * * * shall be administered and enforced with a view to carrying out the above declaration of policy." 49 U.S.C.A. Historical Note preceding Section 1. For this or any court to attempt to answer whether any particular rate is in contravention of this broad policy on the basis of the little testimony elicited in the suspension proceeding would be sheer folly.