FREEPORT SULPHUR COMPANY,
Plaintiff,

v.

UNITED STATES of America, Interstate
Commerce Commission

and

Soo Line Railroad Company, Defendants.

United States District Court
S. D. New York.

Dec. 22, 1961.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Turney, Major, Markham & Sherfy, Washington, D. C. (Donald Markham, Washington, D. C., and Richard E. Nolan, New York City, of counsel), for plaintiff.

H. Neil Garson, Associate Gen. Counsel, Washington, D. C., of counsel for Interstate Commerce Commission.

Robert M. Morgenthau, U. S. Atty., New York City (John Peloso, Asst. U. S. Atty., New York City, of counsel), for United States.

Dorr, Hand, Whittaker & Watson, New York City (Seth M. Dabney and Peter W. Asher, New York City, of counsel), for Soo Line R. Co.

P. M. Brown and R. K. Webster, New York City, of counsel for Continental Ore Corp.

S. Russell Vandivort, San Francisco, Cal., and I. Slifkin, New York City, of counsel for Shell Oil Co.

I. Slifkin, New York City, Eberhard P. Deutsch and R. Himel, New Orleans, La., of counsel for Jefferson Lake Sulphur Co.

Before SWAN, Circuit Judge, and SUGARMAN and METZNER, District Judges.

SWAN, Circuit Judge.

This is a civil action in which Freeport Sulphur Company (hereafter called Freeport) seeks to set aside and enjoin enforcement of an order of the Interstate Commerce Commission (usually referred to hereafter as ICC) which vacated a prior order. The prior order had suspended and directed investigation of new rates proposed by Soo Line and connecting railroads (referred to collectively as "the railroads") for the transportation of crude sulphur from points in western Canada to Chicago, Illinois and points in the Chicago Switching District. The challenged order, dated October 11, 1961, vacated the earlier order and discontinued forthwith the proceeding.[1]

---

I. The order reads:
"At a Session of the Interstate Commerce Commission, Division 2, acting as an Appellate Division, held at its office in Washington, D.C., on the 11th day of October, A.D. 1961
"Investigation and Suspension Docket No. 7668 Crude Suphur—Canada To Illinois and Indiana
"*It appearing*, That by order dated August 25, 1961, Division 2, acting as an Appellate Division, entered upon an investigation of the lawfulness of the rates, charges, regulations and practices stated in certain schedules described in said order, and suspended the operation of such schedules to and including March 25, 1962;
"*It further appearing*, That consideration has been given to the petition, filed September 1, 1961, of respondent rail carriers, for reconsideration and vacation of the said order of Division 2, acting as an Appellate Division, and to discontinue the investigation, and to the concurring petitions, filed September 1-8, 1961, by the Standard Oil Company of California, Shell Chemical Company, Jefferson Lake Sulphur Company, and Continental Ore Company, and reply

Freeport is a large producer of sulphur in Louisiana. It transports its product by barge to the Chicago market where it has attained a dominant position. The cost of barge transportation is substantially less than the rail rate from Louisiana to Chicago, which in turn is substantially less than the former rate from western Canada to Chicago. The proposed rates equalize the rail rates from Louisiana and from western Canada, with the obvious effect of making Canadian crude sulphur more competitive in the Chicago market and thus challenging Freeport's competitive position.

On October 23, 1961, Freeport filed its complaint and applied to Judge Metzner for a temporary restraining order which was denied the same day. On the following day Judge Metzner signed an order to convene a three-judge court to hear plaintiff's suit for an injunction. On November 20 the case came on for argument before the three-judge court on plaintiff's motion for a temporary injunction and motions by the named defendants and others, who had been granted leave to intervene as defendants, to dismiss the Complaint. By stipulation between the parties, time to file reply briefs was extended and the last paper submitted to us is dated December 5.

The events leading up to the ICC order under attack by Freeport were the following: Pursuant to section 6 of the Interstate Commerce Act, 49 U.S.C.A. § 6, the railroads filed schedules of rates to become effective August 26, 1961. On August 14, 1961, pursuant to 49 U.S.C.A. § 15(7) Freeport petitioned the ICC for suspension and investigation of the rate schedules. Replies thereto were filed by the railroads and certain intervening shippers. After considering the pleadings the ICC's Board of Suspension voted not to suspend the rate schedules. On August 24, Freeport filed a petition for reconsideration of the action of the Board of Suspension, and the following day, Division 2 of ICC acting as an Appellate Division, entered an order of investigation and suspension of the rate schedules of the railroads, which otherwise would have gone into effect at midnight of August 25. On September 1, 1961 the railroads petitioned for reconsideration and vacation of the order of August 25, and discontinuance of the investigation. They also requested accelerated action pursuant to Rule 1.200(b) of the ICC Special Rules of Practice, 49 C.F.R. 1.200 (b). Freeport filed a reply on September 18.

In the meantime on September 1, Commissioner Freas had made an order served September 11, 1961, directing that the investigation and suspension proceeding be handled under Modified Procedure in compliance with rules 1.45 to 1.54 inclusive of the ICC General Rules of Practice, 49 C.F.R. 1.45–1.54, that the respondent, Soo Line, and any parties supporting the respondent, file and serve their opening statement of facts and argument on or before October 2, 1961, and that Freeport, and any supporting parties, have 30 days thereafter to file their statement of facts and argument. Soo Line and the parties supporting it filed and served their opening statements on October 2, but the order of October 11 discontinued the investigation before Freeport could file its opening statement and argument.

Plaintiff makes two attacks on the procedure by which the Appellate Division vacated its prior suspension order. First, it is claimed that the vacating order was unlawful because it did not contain findings explaining the reasons for the result, but merely said that it was arrived at in consideration of the various

thereto of the protestant, Freeport Sulphur Company, filed September 18, 1961, and for good cause appearing;

"*It is ordered,* That the Commission's order of August 25, 1961, instituting the above-entitled investigation and suspension proceeding be, and it is hereby, vacated, and that this proceeding be, and it is hereby, discontinued, forthwith.

"By the Commission, Division 2, acting as an Appellate Division.

Harold D. McCoy,
Secretary."

"(Seal)

papers submitted on the petition to vacate "and for good cause appearing." Defendants contend, and we agree, that the order complied with 49 U.S.C.A. § 15 (7). That section requires only that a *suspension* order contain "a statement in writing of its reasons for such suspension"; there is no similar requirement when suspension is denied in the first instance. As to the question now before us, whether an order vacating suspension can be enjoined for failure to state reasons, the authorities, all district court cases, are divided. They were reviewed in Judge Friendly's opinion for a three-judge court in Long Island Railroad Company v. United States (E.D. N.Y.1961) 193 F.Supp. 795. It is unnecessary to review them again in this opinion. None of them is controlling in the Southern District of New York. Judge Friendly concludes that a slight preponderance of authority requires the order to state reasons, but at page 798 he confesses to some difficulty in finding satisfactory grounds for reconciling these decisions with the generally accepted view that a refusal to suspend is not reviewable. We likewise have difficulty. Since the vacation of a prior suspension order has the effect of a denial of suspension thereafter, it may be doubted whether the vacating order need state reasons. In the initial suspension order, the "reasons" stated are the Commission's belief that the proposed rates may be contrary to the Interstate Commerce Act. There would be little point in requiring the Commission, when vacating a prior suspension order, to go through the formality of repeating the reasons stated in its initial order and inserting the word "not" in the appropriate places. The phrase "good cause appearing" seems to us equally informative that the Commission has not acted without actual reconsideration of the reasons stated in its suspension order.

■ Several of the cases plaintiff relies upon [2] find support for review-ability of the vacating order in the last sentence of section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007 (b). This provides that "All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor * * *." With the conclusion that § 1007(b) is applicable, we respectfully disagree. Section 8(b) by its express terms applies only to "cases in which a hearing is required to be conducted in conformity with section 1006 of this title." Moreover, section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, denies us power to review the order. That section is entitled "Judicial review of agency action" and reads:

> "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.
>
> "(a) any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

In our opinion the Interstate Commerce Act, 49 U.S.C.A. § 15(7), commits to the discretion of the ICC the matter of refusing or granting suspension of proposed railroad rates and the vacating of a prior suspension order. Assuming that the Commission's vacating order may be reviewed for abuse of discretion, we see no abuse of discretion in its reconsideration of the suspension order.

■ Plaintiff also contends that, quite apart from the question whether the vacating order was supported by adequate findings, the order was unlawful because it deprived plaintiff of its legal right to a fair hearing. The argument is that plaintiff was denied a fair hearing because after the railroad had submitted their opening statement and argument on October 2, 1961 the investigation was terminated before the time fixed for

2. For example, Amarillo-Borger Express Inc. v. United States (D.C.N.D.Tex. 1956) 138 F.Supp. 411, judgment vacated as moot, 352 U.S. 1028, 77 S.Ct. 594, 1 L.Ed. 598.

plaintiff to submit its opening statement and argument. The recital in the vacating order states that consideration has been given to the petitions for reconsideration and plaintiff's reply thereto, but plaintiff complains that it has no way of knowing whether, in fact, the Commission did not examine also and rely upon the opening statements and arguments of the railroads. This complaint is answered not only by the lack of mention of these statements in the explicit recital in the order of the papers considered, but also by the affidavits submitted to us by Commissioners Goff and Herring within the extended time for replies, which show that they never had seen the opening statements and arguments of the railroads and their supporters. In vacating the suspension order, the Appellate Division was merely reconsidering its investigation and suspension order and determining retroactively that the order should never have been entered.

█ As already indicated we believe that the Appellate Division complied with the provisions of § 15(7) of the Act in reconsidering its suspension order and terminating its investigation. Even if this opinion were erroneous, the matter is not so free from doubt as to justify the granting of a temporary injunction. When the matter is doubtful, denial of a temporary injunction is too well settled to require the citation of authorities.

The foregoing discussion has assumed *arguendo* that Freeport has standing to bring its action. This defendants deny. We now proceed to the consideration of that question.

█ Though it may seem anomalous that Freeport who initiated the proceedings leading up to the suspension order would have no standing as a "party in interest" to have the vacation of that order reviewed under 28 U.S.C.A. § 2323, we are compelled to reach that conclusion by Supreme Court decisions. Freeport is not a shipper which must pay the rates that vacation of the suspension order has allowed to go into effect, as was the plaintiff in Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 55 S.Ct. 822, 79 L.Ed. 1553. Freeport produces sulphur in Louisiana and moves its product to Chicago by barge transportation. The only injury to Freeport by reason of the new rates is from increased competition in the Chicago area made possible by the lower rates now available to shippers of sulphur to Chicago from points in western Canada. In Alexander Sprunt & Son v. United States, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832, it was held (without impairment by the alternative holding of mootness) that a shipper whose competitive position was weakened by the equalization of rates charged his competitors, although he had an obvious interest in the ICC's order compelling the equalization, had "no independent right which is violated by the order," and so could not maintain an injunctive attack upon it. We see no basis for distinction between the Sprunt case and the case at bar. In each the plaintiff was not legally injured by the order, and so cannot complain of it. Both involve attacks by shippers against more favorable rates given to their competitors. The fact that Freeport's attack is based on an alleged denial of procedural rights before the ICC, rather than on the merits of the order, as was Sprunt's, is irrelevant to the question of standing to sue. Equally in point is L. Singer & Sons v. Union Pacific Railroad Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198. There the plaintiffs were merchants located at a market in Kansas City, Missouri. They sought as "parties in interest" to enjoin under 49 U.S.C.A. § 1(20) the construction by the defendant railroad company of tracks to a competing market to be built in Kansas City, Kansas, on the ground that the defendant had not received authority from the ICC as required by §§ 1(18) to 1(22) of the Act. See also Atchison Topeka and Sante Fe Ry. Co. v. United States (E.D.Mo.) 130 F.Supp. 76, 79, aff'd 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785. The view that plaintiff has no standing to sue is fatal to the motion for a temporary injunction and is determina-

tive of the defendants' motions to dismiss the Complaint.

Accordingly plaintiff's motion is denied and defendants' motions are granted. Settle order on ten days' notice. No costs are to be taxed.