**OSCAR MAYER AND COMPANY, Dubuque Packing Company, Little Audrey's Transportation Co., Inc., and Midwest Coast Transport, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Swift & Company, Iowa Beef Packers, Inc., the Atchison, Topeka & Santa Fe Railway Company, Southern Pacific Company, Union Pacific Railroad Company, the Western Pacific Railroad Company, and Trans-Continental Freight Bureau, Intervening Defendants.**

**No. 66–C–90.**

United States District Court
W. D. Wisconsin.

May 16, 1967.

Philip H. Porter, Madison, Wis., David Axelrod, Chicago, Ill., for plaintiffs.

Edmund A. Nix, U. S. Atty., John E. Clarke, Asst. U. S. Atty., Madison, Wis., for the United States.

Robert W. Ginnane, Gen. Counsel, I. C. C., Manny H. Smith, I. C. C., Washington, D. C., for I. C. C.

W. L. Jackman, Madison, Wis., Eugene D. Anderson, William H. Towle, Harvey Huston, Chicago, Ill., Leland E. Butler, San Francisco, Cal., for intervening defendants.

Before DUFFY, Senior Circuit Judge, DOYLE and REYNOLDS, District Judges.

REYNOLDS, District Judge.

This action involves new rates which reduced the tariff for the shipment of meat and packinghouse products from the midwest and southwest to New Mexico, Arizona, and California. Plaintiffs, two motor carriers and two packing houses, seek to set aside and enjoin two orders of the Interstate Commerce Commission (hereafter referred to as the "Commission") which vacated an earlier Commission order suspending the effective date of the new rates.[1]

## PROCEEDINGS BEFORE THE COMMISSION

The Trans-Continental Freight Bureau, as agent for various rail carriers, filed with the Commission tariff schedules containing the new rates which were to become effective February 21, 1966. The effect of the new rates allegedly would be to provide a greater percentage of reductions to the competitors of the plaintiff packing houses and allegedly would result in the diversion of traffic from plaintiff motor carriers.

Before the new rates were to go into effect, various parties, including plaintiffs, filed suspension petitions with the Commission pursuant to 49 U.S.C.A. § 15(7).[2] Proponents of the new rates filed replies. The Board of Suspension entered an order on February 16, 1966, which was served on February 18, 1966, suspending the new rates until September 20, 1966.[3] This order is hereinafter referred to as the "suspension order."

---

1. Plaintiffs assert that this court has jurisdiction by virtue of 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325; 49 U.S.C.A. §§ 15(7) and 17(2) ; and 5 U.S.C.A. § 1007(b).

2. Section 15(7) of the Interstate Commerce Act, 49 U.S.C. § 15(7), provides in pertinent part:
"Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, or charge, or any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate, fare, or charge, the Commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, charge, classification, regulation, or practice; and pending such hearing and the decision thereon the Commission, upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, or practice, but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after full hearing, whether completed before or after the rate, fare, charge, classification, regulation, or practice goes into effect, the Commission may make such order with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, charge, classification, regulation, or practice shall go into effect at the end of such period; * * *."

3.
ORDER
* * *
INVESTIGATION AND SUSPENSION DOCKET NO. 8289
MEATS & PACKING HOUSE PRODUCTS, MIDWEST AND SOUTHWEST TO ARIZ., CALIF. AND N. MEX.
*It appearing,* That there have been filed with the Interstate Commerce Commission tariff schedules setting forth new reduced rates and charges, and new rules, regulations and practices affecting

Thereafter, in accordance with the Commission's Rules of Practice, proponents of the new rates appealed the action of the Board of Suspension and opponents filed replies. The Commission, Division 2, acting as an appellate division, entered an order on April 20, 1966 (served on April 25, 1966), by which the

suspension order was vacated and set aside and the proceeding was discontinued.[4] This order is hereinafter referred to as the "vacating order."

Protestants then filed petitions for reconsideration of the vacating order, and these were denied by the Commission, Division 2, acting as an appellate divi-

such rates and charges, applicable on interstate or foreign commerce, to become effective February 21, 1966, designated as follows:

[A description of the new rate.]

*And it further appearing,* That upon consideration of the said schedules and protests thereto there is reason to believe that they would, if permitted to become effective, result in rates and charges, rules, regulations or practices which would be unjust and unreasonable in violation of the Interstate Commerce Act and constitute unfair and destructive competitive practices in contravention of the National Transportation Policy; and good cause appearing therefor:

*It is ordered,* That an investigation be, and it is hereby instituted into and concerning the lawfulness of the rates, charges and regulations contained in said schedules, with a view to making such findings and orders in the premise as the facts and circumstances shall warrant. In the event the said schedules are changed, amended or re-issued upon termination of the suspension period and the investigation having not been concluded, such changed, amended or reissued schedules will be included in this investigation.

*It is further ordered,* That the operation of the said schedules be and it hereby is suspended, and that the use thereof on interstate and foreign commerce be deferred to and including September 20, 1966, unless otherwise ordered by this Commission.

*It is further ordered,* That the investigation in this proceeding shall not be confined to the matters and issues hereinbefore stated as the reason for instituting this investigation, but shall include all matters and issues with respect to the lawfulness of the said schedules under the Interstate Commerce Act.

*It is further ordered,* That neither the schedules hereby suspended nor those sought to be altered thereby shall be changed until this proceeding has been disposed of or until the period of suspension has expired, unless otherwise ordered by the Commission.

*And it is further ordered,* That a copy of this order be filed with the schedules in the office of the Interstate Commerce Commission, and that copies hereof be served upon the carriers parties to the said schedules and that the said carriers be, and they are hereby, made respondents to this proceeding.

By the Commission, Board of Suspension.

H. NEIL GARSON
Secretary

(SEAL)

4.

**ORDER**
\* \* \*
INVESTIGATION AND SUSPENSION DOCKET NO. 8289
MEAT & PACKING HOUSE PRODUCTS, MIDWEST AND SOUTHWEST TO ARIZ., CALIF., AND N. MEX.

*It appearing,* That by an order dated February 16, 1966, the Commission, Board of Suspension, entered into an investigation concerning the lawfulness of the rates, charges and regulations stated in tariff schedules designated in said order and suspended the operation of said schedules to and including September 20, 1966.

*It further appearing,* That consideration has been given to petitions of Trans-Continental Freight Bureau, filed March 9, 1966, Iowa Beef Packers, Inc., Wilson & Co., Inc., and Swift & Company, filed March 10, 1966, requesting that the order of suspension be vacated; and to various replies thereto;

*And it further appearing,* That the record shows the suspended rates are reasonably compensatory and competitively required and to not constitute a destructive competitive practice, and are not otherwise unlawful; Therefore,

*It is ordered,* That the said order of February 16, 1966, be, and it is hereby, vacated and set aside and the proceeding discontinued as of May 20, 1966.

By the Commission, Division 2 acting as an Appellate Division.

H. NEIL GARSON
Secretary

(SEAL)

sion, in an order entered June 30, 1966, and served July 11, 1966. This order provided that the new rates were to go into effect on August 4, 1966.

Plaintiffs took no further action before the Commission and commenced this action on July 29, 1966, seeking to set aside and enjoin enforcement of the vacating order of Division 2 of the Commission.

## PROCEEDINGS IN THIS COURT

On August 3, 1966, Judge Doyle heard arguments on plaintiffs' motion for a temporary restraining order and on the defendants' and intervening defendants' motions to dismiss the complaint. On August 9, 1966, Judge Doyle entered an order denying the motion to dismiss, providing for the convention of a three-judge court and granting a temporary restraining order. The effect of this restraining order was to revive the suspension order. Thus the new rates which had gone into effect on August 4, 1966, were again suspended until September 21, 1966, when the statutory seven-month suspension period ended. The new rates have been in effect since that date. The defendants appealed from the order of August 9, 1966.

*The court does not have jurisdiction to review the Commission's vacating order of April 20, 1966.*

The plaintiffs contend that this court does have jurisdiction because the reason given by the Commission in its vacation order was insufficient. The defendants claim that this court is without jurisdiction to review orders vacating suspension.

■ The Supreme Court, in reviewing the legislative history of the Act, came to the conclusion that Congress intended to vest the Commission with sole and exclusive power to suspend rates and to remove from the courts any power to suspend rates. Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 662–668, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). To allow judicial review of Commission orders vacating suspension would in effect supersede agency func-

tioning in an area Congress has clearly committed to the Commission. See Luckenbach Steamship Company v. United States, 179 F.Supp. 605, 608–610 (D.Del. 1959).

■ An additional reason why this court does not have jurisdiction to review the Commission's vacating order is that the plaintiffs did not exhaust their administrative remedies. If a protestant of a rate is dissatisfied with Commission action with regard to suspension, recourse to the Commission by formal complaint under 49 U.S.C.A. §§ 13 and 15(1) is the proper procedure. Coastwise Line v. United States, 157 F.Supp. 305 (N.D. Calif.1957); National Water Carriers Association v. United States, 126 F.Supp. 87 (S.D.N.Y.1954); 49 CFR § 1.42(a).

The plaintiffs suggest that this court may review the vacating order under the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 to § 1010.

Section 10 of the Act, 5 U.S.C.A. § 1009, provides in part:

"Judicial review of agency action

"Except so far as (1) statutes preclude judicial review or (2) *agency action is by law committed to agency discretion.*

"Rights of review

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." (Emphasis added.)

■ That the suspension procedures in 49 U.S.C.A. § 15(7) are committed to agency discretion was made clear by the Supreme Court in Arrow Transportation Co. v. Southern Railway Co., supra.

Since suspension proceedings have been committed to the Commission's discretion, judicial review is unavailable under the Administrative Procedure Act.

■ The Court concludes that it does not have jurisdiction to review for any purpose a Commission order vacating a suspension order since suspension is com-

mitted wholly to the discretion of the Commission.

*Assuming this court does have jurisdiction to review the order in question for the limited purpose of examining the statement of reasons for its entry, this Court is of the opinion that no reasons need be stated in a vacating order.*

█ The refusal of the Commission to exercise its suspension power is not judicially reviewable. Luckenbach Steamship Company v. United States, supra; Bison Steamship Corporation v. United States, 182 F.Supp. 63 (N.D. Ohio 1960). The question of whether a Commission order vacating a prior suspension order is reviewable for the limited purpose of examining the sufficiency of the reasons given for the entry of the vacating order is an issue on which the cases are in conflict. Compare Freeport Sulphur Company v. United States, 199 F.Supp. 913 (S.D.N.Y.1961), with Amarillo-Borger Express v. United States, 138 F.Supp. 411 (N.D.Tex.1956). When the Commission refuses to suspend rates, it need not state its reasons therefor. 49 U.S.C.A. § 15(7). The vacation of a prior suspension order has the same effect after it has been entered as an initial refusal to suspend. It is difficult to find justification for a requirement that a vacating order contain the reasons for its entry when reasons are not necessary when the Commission initially refuses to suspend rates. Freeport Sulphur Company v. United States, supra. This Court is of the opinion that the better rule is that an order vacating suspension is not reviewable and rests wholly in the discretion of the Commission.

█ The language of § 15(7) makes it clear that only when the Commission suspends a proposed rate must it give reasons for its action. As Judge Swan, speaking for the court in *Freeport Sulphur,* supra, 199 F.Supp. at 916, reasoned:

"  *  *  * In the initial suspension order, the 'reasons' stated are the

Commission's belief that the proposed rates may be contrary to the Interstate Commerce Act. There would be little point in requiring the Commission, when vacating a prior suspension order, to go through the formality of repeating the reasons stated in its initial order and inserting the word 'not' in the appropriate places. * * *"

A further reason why the statutory requirement that "reasons" must be given in a suspension order should not be extended to vacating orders is the informality of the large number of suspension proceedings and the speed that is required to dispose of them.[5]

Further, protestants of proposed rates are not limited to § 15(7) but may initiate proceedings under § 13(1) of the Act. Section 15(7) is but one proceeding —and a preliminary one—in the statutory scheme of establishing rates. See Bison Steamship Corporation v. United States, supra.

Plaintiffs suggest that reasons must be stated in the vacating order and that the reasons must be based on a record made at a hearing. The suggestion is answered by the *Luckenbach* case, supra, where at page 610 of 179 F.Supp. the Court said:

"  *  *  * The Act generally contemplates the filing of new tariffs with the Commission prior to a hearing. The grant or denial of a suspension order is an interlocutory step preceding a hearing and decision as to the lawfulness of the proposed rate. It may be made pending a hearing on the merits and without the introduction of testimony. The Act does provide that if a suspension order is granted reasons must be stated, but if denied no reason whatever need be stated. *Since the Act contemplates Commission action without a hearing the basis for decision, whether written reasons are required or not, is the expertise of the Commission in the field of transportation. The Act clearly*

5. During the fiscal year ending June 30, 1965, 4,845 protests of rate adjustments were filed and 4,627 such protests were

disposed of. (Defendants' memorandum, pages 11–12.)

*contemplates, no hearing by the Commission before decision and requires no reason be given if it denies suspension. Review in this posture would, in effect, supersede agency functioning.* * * * * *"* (Emphasis added.)

■ This Court believes that the language above, insofar as it relates to a denial of suspension, relates also to an order vacating suspension.

For the foregoing reasons,

It is ordered that the temporary restraining order heretofore entered in this matter be and it is hereby dissolved.

It is further ordered that plaintiffs' complaint be and it is hereby dismissed.

JAMES E. DOYLE, District Judge (concurring).

The threshold issue here is whether this court enjoys jurisdiction to decide whether the Interstate Commerce Commission may revoke a suspension order without an adequate statement of the reasons or basis for the revocation. The court's decision is that it lacks such jurisdiction. I respectfully disagree.

Section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009, subjects the action of an agency such as the Commission to judicial review "[e]xcept so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." The court states: "[t]hat the suspension procedures in 49 U.S.C.A. § 15(7) are committed to agency discretion was made clear by the Supreme Court in Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658 [83 S.Ct. 984, 10 L.Ed.2d 52] (1963). Since suspension proceedings have been committed to the Commission's discretion, judicial review is unavailable under the Administrative Procedure Act."

I believe that the court confuses substance and procedure. Nothing in *Arrow* deals explicitly with matters of procedure. Rather, the rationale of *Arrow* is that, with respect to the suspension of rates, on matters peculiarly within the expertness of the Commission—economics, finance, geography, business—the courts may not second-guess it. 372 U.S. 658, 663–664, 83 S.Ct. 986, 987.

In *Arrow* petitioners contended "that the proposed rates, being substantially lower than the competitive barge rates in effect at the time of filing, unlawfully discriminate against a competing form of transportation." Id. at 660–661, 83 S.Ct. at 985 n. 2. An argument was made that the decision to permit the proposed rates to go into effect defeated the objectives of the National Transportation Policy. Id. at 672–673, 83 S.Ct. at 984. Evidence was presented in the form of economic statistics to prove that the proposed rates would be destructive of competition. Id. at 675–676, 83 S.Ct. at 984 (Clark, J., dissenting).

Plaintiffs here attack only the procedure or method by which the Commission made known its decision to revoke—a decision solely within its discretion to make. To pass upon the contention that the Commission was obliged to, and failed to, state reasons for its revocation of the suspension order is not to second-guess the Commission on a question of economic policy. This is an attack on an alleged noncompliance of an administrative agency with an allegedly applicable statutory procedural requirement. The reasons for granting or refusing to grant or revoking a suspension order are wholly committed to Commission discretion and are invulnerable to judicial review. But the method or procedure by which the Commission takes action is not wholly committed to its discretion and is not invulnerable to judicial review.

The unfortunate effect of the majority's holding herein is demonstrable. The Interstate Commerce Act explicitly provides (49 U.S.C. § 15(7)) that the Commission may suspend the operation of scheduled rates "upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension * * *." If the Commission undertook to suspend certain rates but failed to file "a statement in writing of its reasons for such suspension", and if an interested party sought judicial re-

view to compel the Commission to honor this explicit procedural command by the Congress, the courts would be powerless to respond, under the doctrine declared by the majority here. I do not believe that the decision whether to comply with a procedural command by the Congress is "by law committed to agency discretion" (5 U.S.C. § 1009).

Similarly, when as here it is contended that in revoking a suspension order, the Commission is bound to "include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record * * *" (5 U.S.C. § 1007(b)), I believe that we have jurisdiction to consider the contention on its merits and to decide whether the Commission is or is not bound to include such a statement. I would exercise the jurisdiction to review provided for in 28 U.S.C. § 1336(a) and 5 U.S.C. § 1009.

Plaintiffs contend that there is a requirement that in every order revoking a prior suspension order the Commission must state the reasons or basis for revocation. They contend that this requirement is found in the Administrative Procedure Act, 5 U.S.C. § 1007(b): "All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law or discretion presented on the record. * * *." However, this language must be read in light of the opening sentence of 5 U.S.C. § 1007: "In cases in which a hearing is required to be conducted in conformity with section 1006 of this title— * * *." 5 U.S.C. § 1006 states which hearings are subject to its procedural provisions: "In hearings which section 1003 or 1004 of this title requires to be conducted pursuant to this section— * * *." We are here concerned only with the rule-making provisions of section 1003 since 5 U.S.C. § 1001(c) defines "rule making" as including "agency process for the formula-

tion, amendment, or repeal of" an "approval or prescription for the future of rates * * *." 5 U.S.C. § 1003(b) requires conformity with the provisions of sections 1006 and 1007 only "[w]here rules are required by statute to be made on the record after opportunity for an agency hearing * * *." No showing has been made, nor am I aware, of any statutory requirement that the decision to revoke a suspension order must be made on the record after opportunity for an agency hearing. Therefore I conclude that the requirement of the Administrative Procedure Act for the giving of reasons, 5 U.S.C. § 1007(b), is not applicable in the present case. Freeport Sulphur Co. v. United States, 199 F.Supp. 913, 916 (S.D.N.Y.1961).

Plaintiffs also rely upon Amarillo-Borger Express v. United States, 138 F.Supp. 411 (N.D.Tex.1956), in which the three-judge court, through Judge Brown, said (at 417): "It is precisely because the scope of judicial review is so narrowly limited, that administrative agencies must, in terms beyond the statutory rubric, reveal the basis for their action by which to judge whether it has met the elemental standards of our system and statutory requirements." Judge Brown appears to assert some inherent requirement that administrative agencies reveal the basis for their action. By the phrase "by which to judge," he seems to relate this requirement to the function of judicial review. When judicial review of the reasons or basis for administrative action is present, however limited, there may be some inherent requirement that the administrative agency state the reasons or basis for its action. Otherwise the court exercising judicial review cannot determine whether the reasons or basis for the action of the administrative agency are within the spectrum of reasons, whether broad or narrow, which is beyond re-examination by the court.

As I have earlier agreed, *Arrow* teaches us that the courts may not review the reasons or basis for the Commission's decision to suspend, or not to suspend,

or to revoke suspension of rates. See 49 U.S.C. § 15(7); 5 U.S.C. § 1009. Since any reason or basis for the Commission's action with respect to suspension, however arbitrary or even corrupt, is excepted from judicial review, then obviously a statement of such reasons or basis is unnecessary as an aid to effective review.

In my view, we should assert jurisdiction to review the procedure by which the Commission took the action complained of, but should hold that the Commission was not required to state the reasons or basis for its revocation of the suspension order.